480 S.E.2d 817

**Jacqueline PAGE, Plaintiff Below, Appellee,**

v.

**COLUMBIA NATURAL RESOURCES, INC., and R. Neal Pierce, Defendant Below, Appellants.**

No. 23469.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1996.

Decided Dec. 6, 1996.

---

Allan N. Karlin, Allan N. Karlin & Associates, Morgantown, and Benita Whitman, Elkview, for Appellee.

James S. Arnold, Farmer, Cline & Arnold, Charleston, for Appellants.

Robert M. Bastress, Morgantown, for amici.

ALBRIGHT, Justice:

Appellants, Columbia Natural Resources, Inc. ("CNR"), and R. Neal Pierce, CNR General Counsel, appeal[1] a judgment in favor of Jacqueline Page, a former CNR employee, entered by the Circuit Court of Kanawha County in a *Harless* wrongful discharge action, wherein Ms. Page alleged that she was discharged in retaliation for deposition testimony she gave with regard to a wrongful discharge action brought by another former CNR employee. Appellants contend that the circuit court erred in finding that there is a substantial public policy against terminating employees because they testify or may testi-

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996, and continuing until further order of this Court.

fy in a legal proceeding. Appellants further contend, along with various other assignments of error, that the court erred by instructing the jury regarding "mixed-motive" and "pretext" theories of employment discrimination. We find no error. Consequently, the October 25, 1995 order of the Circuit Court of Kanawha County is affirmed.

## FACTS

Jacqueline Page was employed as a legal secretary by the Law Department of CNR from May, 1987, through September 5, 1990. During Mrs. Page's employment at CNR, she provided secretarial and clerical services primarily to Bethany Boyd, who was a staff lawyer in the Law Department. Personnel problems involving Mrs. Page, Ms. Boyd and others ultimately developed within the Law Department. Appellant submits that Mrs. Page's performance evaluation during the two years preceding her discharge "showed deficient performance and revealed her problems collaborating with other staff members." Appellee submits that she consistently received good evaluations prior to and after her employment with the CNR Law Department, even for subsequent employment as a legal secretary. Appellee contends that her poor evaluations while employed by the CNR Law Department were the result of being caught in the middle of a conflict between Ms. Boyd and Mr. Neal Pierce, CNR General Counsel. She further contends that her poor evaluations resulted from Mr. Pierce's misperception that she was Ms. Boyd's ally.

Between September 29, 1988, and January 12, 1989, Mrs. Page was twice disciplined for improper conduct and received a "final warning" to comply with CNR and Law Department policy. On January 26, 1989, Mrs. Page received a performance evaluation, which reported poor job performance, and an "Employee Development Plan," which advised that failure to improve her job performance would result in termination. Also on January 26, 1989, Mr. Pierce, who as General Counsel is responsible for the CNR Law Department, scheduled a meeting with Mrs. Page and Ms. Boyd to review certain personnel matters. While the two women waited for Mr. Pierce in his office, they discovered a handwritten note that apparently related to legal employment issues. Mr. Pierce received the note after consulting with another lawyer regarding the handling of employment problems involving Ms. Boyd. Ms. Boyd hand-copied the note, because the women suspected that it pertained to one of them. However, Mrs. Page slipped the note under her legal pad and removed it from Mr. Pierce's office at the conclusion of the meeting.

In a subsequent memo responding to a poor performance evaluation, Ms. Boyd disclosed that she had seen the document and asked what it meant. Ms. Boyd also informed Mr. Pierce that the document had been placed inside a newspaper and left in his office. Appellants allege that because the newspaper had been thrown away, Mr. Pierce took no further action regarding the document.

Ms. Boyd was placed on evaluation status in January, 1989, and was terminated in September, 1989. Around March of 1990, Ms. Boyd filed a lawsuit against CNR, Mr. Pierce, and another CNR employee, arising from her termination. When Ms. Boyd was deposed in June, 1990, in relation to her suit, she revealed that Mrs. Page had taken the note from Mr. Pierce's office and had made Ms. Boyd a copy of it. Subsequently, CNR, Mr. Pierce, and the other *Boyd* defendant subpoenaed Mrs. Page to give a deposition in the *Boyd* action. Mrs. Page was deposed on July 25, 1990. During the deposition, Mrs. Page asserted her Fifth Amendment Right with regard to all questions pertaining to the note. In the case *sub judice,* Mrs. Page testified that Mr. Pierce attended her deposition in the *Boyd* case and stared at her with an upset and angry look. She also testified that Mr. Pierce was distant toward her on the day following the deposition. Mrs. Page explained that Mr. Pierce looked at her and then turned away, he did not respond when she spoke to him, and he did not acknowledge her when they passed.

According to appellants, after Mrs. Page's refusal to discuss the document during her deposition, Mr. Pierce consulted with various individuals, including John Henning, the

president of CNR, and Edison Casto, CNR Human Resources Director, regarding Mrs. Page's activity. Thereafter, by letter dated August 1, 1990, Mr. Pierce suspended Mrs. Page and requested that she reconsider disclosing the facts regarding the disappearance of the document. Mrs. Page responded by filing suit against CNR, seeking to enjoin the termination of her employment on the grounds that she could not be terminated for refusing to discuss the document and for invoking her privilege against self-incrimination. The circuit court refused Mrs. Page's prayer for relief and dismissed the action.

Ultimately, Mr. Henning made the decision to discharge Mrs. Page, and Mr. Casto concurred with the decision. Appellants assert that while Mr. Henning and Mr. Casto were apprised that Mrs. Page refused to discuss the missing document, neither of them had knowledge of the contents of Mrs. Page's deposition testimony. However, according to appellee, Mr. Pierce recommended Mrs. Page's termination, and he admitted at trial that his recommendations carried substantial influence. Appellee further contends that neither Mr. Henning nor Mr. Casto appeared to have much knowledge about the missing document and appeared to base their decision to discharge Mrs. Page upon Mr. Pierce's recommendation.

Mr. Pierce informed Mrs. Page of her termination by letter dated September 5, 1990. Mrs. Page subsequently applied for unemployment compensation benefits. She was initially awarded benefits. However, on appeal, the Circuit Court of Kanawha County reversed. The court concluded that Mrs. Page was terminated because she was guilty of gross misconduct.

On September 2, 1992, Mrs. Page filed this suit under the retaliation section of the West Virginia Human Rights Act and under a *Harless* public policy theory. The lower court ruled against Mrs. Page on her Human Rights Act claim, and the case went to the jury on the substantial public policy theory. Mrs. Page claimed that she was discharged due to her deposition testimony in the *Boyd*

case and that such discharge is against substantial public policy. Judgment was entered in favor of Mrs. Page, and she was awarded damages of $130,000 for past economic loss and $150,000 for emotional distress. CNR and Mr. Pierce then filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, and a motion for remittitur of the jury verdict. By order entered October 25, 1995, the Circuit Court of Kanawha County denied appellants' motion for judgment notwithstanding the verdict or for a new trial and reduced appellee's award for past economic losses to $95,282. It is from this order that appellants now appeal.

## PUBLIC POLICY BASIS FOR WRONGFUL DISCHARGE ACTION

Appellants argue that the circuit court erred by permitting appellee to present a *Harless* wrongful discharge claim based upon the purported broad public policy set forth in Plaintiff's Instruction No. 3.[2] Appellants argue that such a substantial public policy has not been sufficiently defined by our law. Appellants assert further that the purported public policy, as advanced by Mrs. Page, was too broadly defined and would virtually bind the hands of an employer when an employee testifies, or may testify, in any deposition or lawsuit. Moreover, appellants argue that Plaintiff's Instruction No. 3 fails to provide specific guidance to a reasonable person, as the principle of "substantial public policy" inherently requires.

■ Thus, we are presented with the question of whether it is a violation of substantial public policy in West Virginia to fire an at-will employee because such employee has given, or may give, testimony in relation to a legal action. "A determination of the existence of public policy in West Virginia is a question of law, rather than a question of fact for a jury." Syl. pt. 1, *Cordle v. General Hugh Mercer Corp.*, 174 W.Va. 321, 325 S.E.2d 111 (1984). "Where the issue on an appeal from the circuit court is clearly a

---

2. Plaintiff's Instruction No. 3 stated: "Under the laws of West Virginia, it is unlawful for any employer to discharge an individual because she

has given testimony as a witness at a deposition in a lawsuit or because she may be a witness in the trial of a lawsuit."

question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

■ There appears to be no dispute that Mrs. Page was an at-will employee. This court first addressed the question of whether we recognize an exception to the traditional rule that an employer is not liable for the discharge of an at-will employee in *Harless v. First National Bank in Fairmont*, 162 W.Va. 116, 246 S.E.2d 270 (1978).[3] The plaintiff in *Harless* alleged that he was discharged in retaliation for his efforts to persuade his employer to comply with State and Federal consumer credit and protection laws. The circuit court granted the employer's motion to dismiss on the ground that plaintiff failed to state a cause of action. This Court surveyed the law of other states and observed a growing trend toward recognizing employer liability for discharge of an at-will employee if the employee could establish that the employer intended to contravene some substantial public policy. We then reversed the circuit court and concluded that:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syllabus, *Id.*

In a subsequent case, we recognized that "[m]ost of our retaliatory discharge cases

involve violations of statutes that we deem to articulate a substantial public policy." *Birthisel v. Tri-Cities Health Services Corp.*, 188 W.Va. 371, 376, 424 S.E.2d 606, 611 (1992). However, in *Birthisel*, as in the case *sub judice*, there was no violation of a specific statute. The plaintiff in *Birthisel* was a social worker who was terminated after she refused to add treatment information to closed patient charts in preparation for an accreditation visit.[4] Ms. Birthisel relied on regulations of the West Virginia Social Work Board and general policy language contained in the social workers' licensing statute as substantial public policy sources upon which to base her claim of retaliatory discharge. This Court determined that these sources did not reflect a substantial public policy of this State.[5] The *Birthisel* Court explained that "[t]o identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, we look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." *Id.* at syl. pt. 2, 424 S.E.2d 606. "Inherent in the term 'substantial public policy' is the concept that the policy will provide specific guidance to a reasonable person." *Id.* at syl. pt. 3, 424 S.E.2d 606.

Turning to the issue before us, we observe that other jurisdictions have recognized a public policy against firing an at-will employee for giving testimony in various circumstances.[6] North Dakota recognizes an

---

3. The *Harless* Court observed that "[s]ome suggestion of the applicability of equitable principles [to the general rule against employer liability for the discharge of an at-will employee] can be found in *Chicago Towel Co. v. Reynolds*, 108 W.Va. 615, 152 S.E. 200 (1930)." *Harless*, 162 W.Va. at 124, 246 S.E.2d at 275.

4. The information reflected treatment that the patients actually received, but which had been documented in another form.

5. The Court stated:
   Neither of these provisions contain any specific guidance. Their general admonitions as to the requirement of good care for patients by social workers do not constitute the type of substantial and clear public policy on which a retaliatory discharge claim can be based. If such a general standard could constitute a substantial

public policy, it would enable a social worker to make a challenge to any type of procedure that the worker felt violated his or her sense of good service.
*Id.* at 377–78, 424 S.E.2d at 612–13. The Court also commented that:
   [B]oth the statute and the regulations relied upon by the plaintiff are extremely general and do not constitute a specific statement of public policy. Moreover, when we look to the disciplinary grounds contained in the social workers' licensing statute ... we do not find any direct prohibition against the conduct requested of the plaintiff in this case.
*Id.* at 379, 424 S.E.2d at 614 (footnote omitted).

6. We also observe that some jurisdictions have declined to recognize such a public policy. *Miller v. SEVAMP, Inc.*, 234 Va. 462, 362 S.E.2d 915 (1987) (Employee had no cause of action for

exception to the at-will doctrine when the termination violates a "well established and important public policy," which is "evidenced by a constitutional or statutory provision." *Ressler v. Humane Society of Grand Forks,* 480 N.W.2d 429, 431 (N.D.1992). In *Ressler,* the Supreme Court of North Dakota found that:

> [A] retaliatory discharge of an employee for honoring a subpoena and testifying truthfully would violate public policy in North Dakota. That public policy is expressed by our Legislature in our criminal statutes prohibiting the failure to obey a subpoena, the refusal to testify, and the making of a false statement. Those statutes evidence a clear and compelling public policy which goes to the very heart of our judicial system.

*Id.* at 432 (footnote omitted).

The United States District Court for the Eastern District of Pennsylvania was asked to determine whether it was against Pennsylvania public policy to terminate an employee for testifying before a grand jury in *Freeman v. McKellar,* 795 F.Supp. 733 (E.D.Pa.1992). Pennsylvania law provides for a narrowly construed exception to the at-will doctrine for employees who are terminated in violation of a significant, clearly mandated public policy. The *Freeman* court determined that Pennsylvania statutes prohibiting perjury before a grand jury, prohibiting efforts to intimidate a witness to give false testimony, and prohibiting retaliation against witnesses reflected a sufficiently clear and significant public policy against deterring persons from providing truthful testimony to a county grand jury.

In addition, Oklahoma recognizes an exception to the at-will doctrine "in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy articulated by constitutional, statutory or decisional law." *Bishop v. Federal Intermedi-*

*ate Credit Bank of Wichita,* 908 F.2d 658, 662 (10th Cir.1990) (quoting *Burk v. K–Mart Corp.,* 770 P.2d 24 (Okla.1989)). In *Bishop,* the United States Court of Appeals, concluded that:

> [T]he Oklahoma Supreme Court would recognize a public policy exception to the at-will doctrine if Bishop can in fact prove that he was terminated because of testimony given during a hearing conducted by Senator Boren and Representative Synar. Recognition of the exception supports our tradition of free, direct and truthful testimony at legislative hearings, a policy Oklahoma has implicitly recognized. *Cf.* Okl. Stat. Ann. title 12, § 411 (1988) ("No testimony given by a witness ... before any committee ... shall be used as evidence in any criminal proceeding against him in any court...."). Presumably, Oklahoma would extend the same protections out of comity to hearings conducted under congressional authority.

*Bishop,* 908 F.2d at 662–63.

Similarly, looking to West Virginia law, we find sufficient statutory support for a substantial public policy against dismissing an employee for truthfully testifying in relation to a legal action. West Virginia Code §§ 61–5–1 and 61–5–2 (1992) prohibit wilful perjury and false swearing, or procuring another to do so. Moreover, W.Va.Code § 61–5–27 (1992) prohibits, in part, intimidating or impeding any witness, or attempting to obstruct or impede the administration of justice in any court.

We believe that this substantial public policy also meets the requirement of providing specific guidance to a reasonable person. Basic to the administration of justice is the search for the truth. Thus, a reasonable employer should be aware that any attempt to interfere with the process of obtaining truthful testimony, by either intimidating a potential witness/employee prior to his or her

---

retaliatory discharge where she was discharged because of her testimony in a grievance proceeding initiated by a fellow employee. Court found that public policy exceptions to at-will doctrine are established by existing law for the protection of the public generally, and employer's act of retaliation in this case impinged only upon private rights established by the employer's internal

regulations.); *Harney v. Meadowbrook Nursing Center,* 784 S.W.2d 921 (Tenn.1990) (No public policy violation for discharging at-will employee after she testified in a former co-employee's unemployment compensation hearing when employer made no attempt to interfere with employees testimony, and employer alleged that such testimony was false.)

testimony or retaliating against such witnesses/employee thereafter, violates the clear and substantial public policy of this State.

■■■ Consequently, we hold that it is against substantial public policy of West Virginia to discharge an at-will employee because such employee has given or may be called to give truthful testimony in a legal action. We are mindful of appellants' claims that the instruction[7] offered and given defines that public policy too broadly. Appellants' brief seems to suggest that the instruction, if given, should have somehow limited the application of any such substantial public policy to situations in which testimony was given in a matter related directly to the witness's employment.[8] If that be a correct perception of appellants' position, we believe that the facts underlying this case, that is, the testimony of Mrs. Page in the *Boyd* case, meets the suggested limitation. As we understand the *Boyd* case and Mrs. Page's deposition testimony, Mrs. Page's testimony related directly to her experiences as a CNR employee. The instruction given clearly and succinctly states appellee's theory of the case and the applicable substantial public policy. We note that the plaintiff in such an action has the burden to prove *prima facie* that the discharge occurred *because* of the violation of that substantial public policy. Likewise, appellants defended by undertaking to show that the discharge was *because* of other, legitimate reasons proper to its status as an at-will employer. The task of ascertaining, as a matter of fact, whether the discharge was because of a violation of substantial public policy, or for some other proper reason, was put to the jury and determined by it.

We are also mindful of appellants' assertion that any endorsement of a public policy against discharge for giving testimony in a legal proceeding "binds the hands of an employer" with respect to any employee who so testifies. We understand the thrust of that argument to be that our recognition of such a public policy will shield employee wrongdoers

from discipline or discharge, in effect because whenever an employee has so testified, whether truthfully or not, any subsequent discharge will be subject to challenge on public policy grounds. In the practical scheme of things, there is obvious merit to appellants' position. However, such an objection may be raised to practically every ground that may be asserted in a *Harless* type action. It seems to this Court that the question of whether a discharge is retaliatory or for a legitimate reason must, of necessity, be resolved by the finders of fact to whom such questions are consigned by our legal system. Moreover, the substantial public policy at issue here—the unobstructed search for the truth in legal proceedings—is a high purpose deserving profound respect in our society. We cannot conclude that the unfettered discharge of at-will employees ought to take precedence over the search for truth, free of the threat of retaliatory discharge, especially where a means is available to distinguish proper reasons for discharge from retaliation.

Appellants asserted in their brief that "Mrs. Page's entire case rises or falls upon whether a substantial public policy on employee testimony, as she defines it, exists in West Virginia and whether her discharge violated that public policy." Based upon our determination that Mrs. Page adequately defined a substantial public policy against terminating employees based upon their testimony in legal actions, and the jury's determination that appellants violated that policy, we conclude, borrowing appellants' language, that Mrs. Page's case rises on this issue.

## LEGITIMATE GROUNDS FOR DISCHARGE

As our discussion thus far has indicated, appellants argue that legitimate grounds existed for appellee's termination and appellee's evidence was insufficient to support a

---

7. *See* footnote 2 for the text of the instruction.

8. Appellants argue additionally that Plaintiff's Instruction No. 3 failed to require that the testimony be truthful. While the failure to testify truthfully may present an occasion for further in-

struction in such cases, we find that appellants were not prejudiced by this omission, since there is no allegation that Mrs. Page was terminated because her testimony was not truthful.

claim of wrongful discharge.[9] Appellants argue further that appellee borrowed a "mixed-motive" theory of liability from the body of discrimination law, and should therefore have been required to show "direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion." *Fuller v. Phipps,* 67 F.3d 1137, 1143 (4th Cir.1995) (*quoting Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 1805, 104 L.Ed.2d 268, 305 (1989) (O'Connor, J., concurring)). Accordingly, appellants argue, the circuit court erred by refusing to enter judgment for them and against appellee.

Appellee responds that the court did not err by refusing to enter judgment for appellants. Appellee contends that the issue in a wrongful discharge case is whether the discharge involved an unlawful motive, and appellee presented sufficient evidence to support the verdict below. Furthermore, appellee submits that she was entitled to a mixed-motive instruction in light of this Court's recent decision in *Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 479 S.E.2d 561 (1996). Finally, appellee argues that appellants waived an argument on this issue by agreeing to a mixed-motive instruction at trial.

■ We interpret the first part of appellants' assignment of error as one challenging the sufficiency of the evidence.

In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Syl. pt. 5, *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984). While the question of whether Mrs. Page was terminated in retaliation for her testimony is not strikingly obvious from the record in this case, we observe that employers rarely discriminate openly. Applying the standard set forth in *Orr,* we cannot say that there was insufficient proof upon which the jury could base its verdict. Moreover, we note that the jury had the benefit of observing the testimony and determining the credibility of the evidence presented on behalf of both parties.

Appellants also complain that appellee should have been required to show direct evidence that CNR placed substantial negative reliance on Mrs. Page's testimony, because appellee borrowed a "mixed-motive" theory of liability from the body of discrimination law. To support this contention, appellant cites *Fuller v. Phipps,* 67 F.3d 1137 (4th Cir.1995). Thus, it appears that appellants' complaint is that the instruction was incomplete or that there was insufficient evidence upon which to base the instruction.

■ The record indicates that both Mrs. Page and CNR tendered mixed-motive instructions. Because the parties could not come to an agreement on a single mixed-motive instruction, they agreed that both mixed-motive instruction would be read to the jury.[10] The circuit court accepted this

---

**9.** Appellants assert that Mrs. Page was discharged for removing a document belonging to CNR and thus violating duties appropriate to her position as a legal secretary. We stress that nothing in this opinion should be interpreted as condoning such conduct. Our decision today upholding the jury verdict respects its fact-finding mission of determining the actual motivating factor for Mrs. Page's discharge.

**10.** Plaintiff's Instruction No. 8 stated:

The Court instructs the jury that it is not necessary for Jacqueline Page to prove that the decisions of the defendant were solely due to any retaliatory motive. The law recognizes that, in some cases, an employer may have

mixed motives for an employment action. In a mixed motive case, the decision is a result of multiple factors, at least one of which is legitimate and at least one of which is illegitimate.

If you, the jury, believe that the plaintiff has proven that this is a case of mixed motives, as defined by the Court, then you may proceed to evaluate the claim pursuant to the rules that have been set forth for such cases.

In a mixed motive case, Jacqueline Page must prove that protected conduct, her testimony in Bethany Boyd's lawsuit, was a substantial or motivating factor in her discharge. Jacqueline Page need not show that her testimony in Bethany Boyd's lawsuit was the only precipitating factor for the discharge. If you,

resolution, and both instructions were read to the jury without objection. Appellants also offered a mixed-motive instruction defining the terms "substantial" and "motivating factor", which was read to the jury without objection.

'No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection; but the court or any appellate court, may, in the interest of justice, notice plain error in the giving or refusal to give an instruction, whether or not it has been made subject of an objection.' Rule 51, in part, *W.Va. RCP.*

Syl. pt. 1, *Shia v. Chvasta,* 180 W.Va. 510, 377 S.E.2d 644 (1988). Not only did appellants fail to object to plaintiff's mixed-motive instruction on either of the grounds mentioned above, but appellants offered their own mixed-motive instructions which also failed to require direct evidence that CNR placed substantial negative reliance on Mrs. Page's testimony. "A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal."

the jury, believe that the plaintiff has proven, by a preponderance of the evidence, that Jacqueline Page's testimony in the Boyd lawsuit or her prospective involvement as a trial witness was a substantial or motivating factor in her discharge, than [sic] the defendants may still defeat her claim by showing, by a preponderance of the evidence, that she would have been discharged even in the absence of her protected conduct.

Thus, if you, the jury, believe that this is a case where there are legitimate and illegitimate factors that motivated the employer, and if you believe that the plaintiff has proven, by a preponderance of the evidence, that an illegitimate factor was one of the motives behind the decision, then you must determine if the employer has proven, by a preponderance of the evidence, that it would have made the same decision even if it had not considered the prohibited factor.

Defendant's Instruction No. 3–A stated:

If you find that multiple reasons existed for Mrs. Page's discharge, Mrs. Page nevertheless may be entitled to recover if a substantial or motivating factor was her testimony in Bethany Boyd's lawsuit. If you determine that Mrs. Page's testimony in Bethany Boyd's lawsuit did

Syl. pt. 1, *Maples v. West Virginia Department of Commerce,* 197 W.Va. 318, 475 S.E.2d 410 (1996). Because appellants failed to preserve this error, we will reverse only if we find plain error. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). We do not believe that appellants have shown plain error in the giving of Plaintiff's Instruction No. 8.

This Court recently addressed the requirements for a mixed-motive instruction in a disparate treatment action brought under the West Virginia Human Rights Act, W.Va. Code § 5–11–9 (1992), in *Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 479 S.E.2d 561 (1996). After reviewing the developments in federal discrimination law, we concluded that the purposes of the West Virginia Human Rights Act "would be best served by adopting that federal standard, as set forth in the 1991 Civil Rights Act." *Id.,* at 75, 479 S.E.2d at 585. Thus, we held that:

[A] plaintiff states a claim under the Act if he or she proves by a preponderance of the evidence that a forbidden intent was a

not make any difference in the decision to terminate Mrs. Page, or that it was not one of the reasons that caused the discharge, then Mrs. Page has not proved her case and your verdict should be for Columbia Natural Resources and Mr. Pierce. However, if you conclude that Mrs. Page's testimony in Bethany Boyd's lawsuit was a substantial or motivating factor in her discharge, then Columbia Natural Resources and Mr. Pierce must establish by a preponderance of the evidence that Mrs. Page would have been discharged for other reasons, even if Mrs. Page had not testified in the Boyd case. Your verdict must be for Columbia Natural Resources and Mr. Pierce if you determine that the defendants would have discharged Mrs. Page even if she had not testified in Bethany Boyd's case.

Defendant's Instruction 4 stated:

Mrs. Page seeks to establish liability on the part of Columbia Natural Resources and Mr. Pierce by alleging that her testimony in the *Boyd* case was a substantial or motivating factor for her discharge.

The term "substantial" refers to the materiality and importance of an act, while the term "motivating factor" means a cause or reason that leads a person to act.

*motivating factor* in an employment action. Liability will then be imposed on a defendant unless it proves by a preponderance of the evidence that the same result would have occurred even in the absence of the unlawful motive.

*Id.* (emphasis added). Moreover, we expressly rejected the circumstantial-direct evidence distinction. *Id.*[11] Although we have rejected the circumstantial-direct evidence distinction, we emphasize that the plaintiff does have the burden of proving by a preponderance of the evidence that a forbidden intent was a motivating factor in the adverse employment action. While this is a greater burden than that required under the pretext theory, which is discussed in the next section, we believe it is justified by the fact that, once a plaintiff has met this burden, the burden of persuasion and the risk of nonpersuasion shifts to the defendant.

■ After carefully reviewing our opinion in *Skaggs*, we conclude that the scheme of proof set forth in that case is appropriate in a *Harless* public policy action. Consequently, we hold that once the plaintiff in an action for wrongful discharge based upon the contravention of a substantial public policy has established the existence of such policy and established by a preponderance of the evidence that an employment discharge was motivated by an unlawful factor contravening that policy, liability will then be imposed on a defendant unless the defendant proves by a preponderance of the evidence that the same result would have occurred even in the absence of the unlawful motive.[12]

Having adopted the *Skaggs* scheme of proof in wrongful discharge cases based on alleged contravention of substantial public policy, and thus having rejected the direct-evidence standard in mixed-motive *Harless* type cases, we conclude that there was no error relating to Plaintiff's Instruction No. 8 in the circumstances of this case.

## PRETEXT

Appellants next argue that the circuit court erred by permitting appellee to present a "pretext" discrimination law theory in her *Harless* action. Appellants assert that Plaintiff's Instruction No. 7[13] was improper be-

11. We stated:

> We also emphatically reject the position that the burden shifts only when the plaintiff has established illicit motive through direct evidence, and we do so for several reasons. First, whether the plaintiff's proof is by direct or circumstantial evidence, or both, has nothing to do with the strength of her case; rather, the plaintiff's ability to produce direct evidence is completely accidental. Second, neither form of proof is necessarily more reliable than the other. Circumstantial evidence can be powerful, and direct evidence limp, and vice versa. Third, the direct-circumstantial distinction overlooks what the jury's role is in disparate treatment cases. Essentially the jury is charged with the duty of recreating what in fact happened and whether the facts that did happen included intentional discrimination.... Thus, if the jury reads the facts and concludes that the employee has proved that a discriminatory motive entered into the employer's decision, it should not matter whether that conclusion was induced by direct or circumstantial evidence. Fourth, we are not convinced that the direct-circumstantial distinction is a viable or meaningful one. Obviously, several of the federal circuits have had a great deal of difficulty with it, and there are substantial authorities who conclude that there is no such thing as direct evidence "that involves neither a logical nor an inferential process."

*Skaggs*, at 76, 479 S.E.2d at 586 (citations omitted).

12. We note that a mixed-motive type standard has previously been applied to retaliatory discharge cases where constitutional rights were implicated. In syllabus point 3 of *McClung v. Marion County Commission*, 178 W.Va. 444, 360 S.E.2d 221 (1987), we held:

> In a retaliatory discharge action, where the plaintiff claims that he or she was discharged for exercising his or her constitutional right(s), the burden is initially upon the plaintiff to show that the exercise of his or her constitutional right(s) was a substantial or a motivating factor for the discharge. The plaintiff need not show that the exercise of the constitutional right(s) was the only precipitating factor for the discharge. The employer may defeat the claim by showing that the employee would have been discharged even in the absence of the protected conduct.

*See also,* syl. pt. 9, *Mace v. Charleston Area Medical Center Foundation, Inc.*, 188 W.Va. 57, 422 S.E.2d 624 (1992).

13. Plaintiff's Instruction No. 7 stated:

> If you, the jury, determine that the reasons offered by the defendant for its discharge of the plaintiff are not the true reasons, then your rejection of those reasons permits an inference against the defendants which you may consid-

cause (1) this is not a discrimination case; (2) the pretext/inference instruction was incomplete under the *McDonell Douglas* framework; (3) the jury was not properly instructed as to the burden of proof; and (4) the pretext instruction with the mixed-motive instruction was confusing.

When Plaintiff's Instruction No. 7 was discussed during the instruction conference, defense counsel first indicated that his only objection to the instruction was that it stated the obvious and, therefore, might confuse and mislead the jury. After the court determined that the instruction should be given, defense counsel objected that the instruction leaves the improper indication that the burden of persuasion may have shifted to the defendant.

Previously in this opinion, we adopted, for use in a *Harless* action, the scheme of proof for pursuing a mixed-motive theory as set forth in *Skaggs*. We likewise adopt the *Skaggs* scheme of proof for pursuing a pretext theory. Furthermore, we endorse the discussion of the burden of proof

with respect to a pretext theory as set out in that opinion and drawn from *McDonnell Douglas*, *Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 457 S.E.2d 152 (1995), and *St. Mary's Honor Center v. Hicks*.[14] Because we believe that both a mixed-motive and a pretext theory may be presented in a *Harless* action and adopt the *Skaggs* scheme of proof to each theory, we find no error in the trial court's rulings. On the additional objections now assigned by appellants, we apply the standard required for assigning error to the giving of an instruction, as set forth in Rule 51 of the West Virginia Rules of Civil Procedure and *Shia v. Chvasta, supra*, and find that appellants' objection was not sufficiently specific to preserve those additional grounds of error. "The purpose of requiring a specific objection in this instance is to bring into focus the precise nature of the alleged errors so the trial court is afforded an opportunity to correct them." *Earp v. Vanderpool*, 160 W.Va. 113, 120, 232 S.E.2d 513, 517 (1976). In the case *sub judice*, appellants failed to raise two of the specific objections now relied upon, and thus the trial

---

er in determining whether the defendants wrongfully discharged the plaintiff.

**14.** Unlike the burden-shifting scheme of proof required when applying a mixed-motive theory, where the *burden of proof* involving both the obligation to go forward with the evidence and the burden of persuasion, actually shifts at one point to the defendant/employer, in the pretext scheme, as explained below, only the burden of production shifts to the defendant/employer. We explained in *Skaggs:*

[W]e apply a burden-shifting framework similar to that adopted in *McDonnell Douglas, Barefoot,* and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).... This method of proof permits a plaintiff to establish his or her prima facie case, which is in essence a rebuttable presumption of discrimination. The *burden of production* then shifts to the employer to come forward with a legitimate, nondiscriminatory reason for its actions. In the unlikely event that the employer at this juncture remains silent, the unrebutted presumption compels the court to enter judgment for the plaintiff.... But once the employer meets this *burden of production,* the presumption raised by the prima facie case is rebutted, and the "inquiry proceeds to a new level of specificity." ...
The *Barefoot/McDonnell Douglas* framework and its attendant burdens and presumption cease to be relevant at that point, and the onus

is once again on the employee to prove that the proffered legitimate reason is a mere pretext rather than the true reason for the challenged employment action.... While *Barefoot/McDonnell Douglas* allows the employee to shift the burden of production to the employer by establishing a prima facie case, at *all times the burden of proof or the risk of nonpersuasion on the issue of whether the employer intended to discriminate remains on the plaintiff.*
*Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 71–72, 479 S.E.2d 561, 581–82 (1996) (emphasis added) (footnotes omitted) (citations omitted). While we are importing from the scheme of proof applicable to discrimination actions, as set forth in *Skaggs,* we do not intend to diminish, in any manner, the requirements for initially proving a *prima facie* case of wrongful discharge.

Appellants argue additionally that the court erred by giving both a mixed-motive and a pretext instruction, which likely confused the jury. In accordance with our decision in *Skaggs,* we approve the giving of both a mixed-motive and a pretext instruction in a *Harless* public policy action. We believe that it is within the trial court's discretion to determine whether the evidence justifies giving a mixed-motive instruction, a pretext instruction, or both. Moreover, in the event that both instructions are given, it is within the court's discretion to avoid confusion by clearly distinguishing the two theories in the jury charge.

court was denied the opportunity to correct any potential errors related to those objections. Since we find no plain error with respect to those two additional assignments, we affirm the ruling of the circuit court on Instruction No. 7.

## COLLATERAL ESTOPPEL AND RES JUDICATA

Appellant argues that the circuit court erred by refusing to dismiss appellee's claim based upon the preclusive effect of earlier proceedings. We do not find that these proceedings precluded the instant action or prevented the determination of any issues arising under the pleadings.

### A. Injunction Action

Appellants submit that after Mrs. Page was suspended, but prior to her termination, she filed a civil action seeking injunctive relief to prevent her discharge. Apparently, Mrs. Page alleged in that action that her discharge ought to be prevented because she was being forced to waive her constitutionally protected right against self-incrimination. It appears from the record that the circuit court dismissed the action on the ground that Mrs. Page had an adequate remedy at law and, except as to the requirement for equitable relief (that there be no adequate remedy at law), the court did not reach the merits of the injunction action. We find no evidence in the record before us indicating the determination of any other legal or factual issue in the injunction proceeding.

### B. Unemployment Action

After Mrs. Page's employment was terminated, she applied for unemployment compensation benefits. CNR contested the claim and asserted that Mrs. Page was disqualified from receiving benefits because she was discharged for gross misconduct. Mrs. Page, through legal counsel not involved in the litigation before us, asserted that she was not disqualified, because she was terminated as a result of invoking her privilege against self-incrimination regarding inquiries about the missing document.

Apparently, Mrs. Page did not present evidence at an evidentiary hearing that was held on November 9, 1990. Thereafter, in a decision dated November 15, 1990, the administrative law judge (ALJ) found that Mrs. Page was not discharged for misconduct, and thus she was eligible for unemployment benefits. The ALJ held that the deposition of Ms. Boyd, which indicated that Mrs. Page had taken the note from Mr. Page's office, was inadmissible hearsay. The claim was appealed to the Board of Review, where the ALJ's decision was affirmed. Thereafter, the Circuit Court of Kanawha County found that the Boyd deposition was admissible and reversed the Board of Review. The circuit court concluded that Mrs. Page was terminated because she was guilty of gross misconduct. Mrs. Page's subsequent petition for appeal before this Court was denied on February 21, 1992.

In syllabus point three of *Mellon–Stuart Co. v. Hall*, we stated:

> An assessment of three factors is ordinarily made in determining whether res judicata and collateral estoppel may be applied to a hearing body: (1) whether the body acts in a judicial capacity; (2) whether the parties were afforded a full and fair opportunity to litigate the matters in dispute; and (3) whether applying the doctrines is consistent with the express or implied policy in the legislation which created the body.

178 W.Va. 291, 359 S.E.2d 124 (1987).

In *Slack v. Kanawha County Housing and Redevelopment Authority*, 188 W.Va. 144, 423 S.E.2d 547 (1992), this Court commented that "the statutory standard applicable in unemployment compensation claims is more liberal in accordance with the beneficial purposes underlying unemployment security law and is not applicable in a constructive discharge case." *Id.* at 155, 423 S.E.2d at 558. The Court went on to state:

> As a consequence, we find no merit in the plaintiff's claim that the trial court erred in not directing a verdict in her favor based on the fact that she prevailed in her unemployment compensation claim. Where the issues litigated are not the same, collateral estoppel has no applicabili-

ty. *See* Syllabus Point 2, *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983). *Id.* at n. 13.

In the same vein, in *Taylor v. City National Bank*, 642 F.Supp. 989, 997 (S.D.W.Va. 1986), the United States District Court expressly rejected the assertion that an employee was collaterally estopped from litigating her employment related claim despite the fact that she lost her unemployment case.

We note also that in *Vest v. Board of Education of County of Nicholas*, 193 W.Va. 222, 455 S.E.2d 781 (1995), we declined to apply collateral estoppel or res judicata to bar plaintiff's civil suit based upon her previous hearing before the Grievance Board. In *Vest*, we recognized that "the Legislature designed the grievance process to be simple and expeditious. Consequently, the process is streamlined and lacks many of the adversarial accouterments found in judicial and [Human Rights] Commission[ ] proceedings." *Vest*, 193 W.Va. at 227, 455 S.E.2d at 786. We reasoned that, "[b]y not imposing a collateral bar, we reinforce the Legislature's purpose ... of creating a simple and expeditious procedure for resolving employees' grievances." *Id.*

In considering appellants' argument, we note further that unemployment proceedings are presented and decided without the delay and formality involved in court proceedings. *See, e.g.,* 84 C.S.R. § 2.3(a). Moreover, formal rules of evidence do not apply. There is no discovery and little time to investigate, prepare, and present the complicated evidence necessary to prove the issues of motive and intent that are required in a retaliatory discharge claim. We believe that, in accord with the federal decision in *Taylor* and our holdings in *Slack* and *Vest*, it is appropriate to once again reject a collateral bar here to reinforce the Legislature's purposes in designing the employment security claim process as a speedy and relatively informal process. Moreover, in view of the relaxation of procedural rules and evidentiary requirements in the administrative proceedings—along with the discovery limitations and pro-

hibitions and the frequent attention to specific policy goals in such proceedings—we are of the opinion that only rarely, if at all, will administrative proceedings provide the same full and fair opportunity to litigate matters as will a judicial proceeding involving the complexity, intensity, and specific inquiries common to a wrongful discharge case. Therefore, we find no error in the rulings of the trial court on the issues under discussion.

## ADVERSE INFERENCE INSTRUCTION

Appellants argue that the circuit court erred by refusing appellants' adverse inference instruction based on appellee's failure to call her former attorney as a witness.[15]

Appellants contend that Mrs. Page testified that she relied upon the advice of her former lawyer when she did not allege in the two previous proceedings that she was discharged for giving testimony in the *Boyd* suit. She was also permitted to use her attorney's advice to justify why she would not discuss the missing document with appellants. Thereafter, Mrs. Page failed to call her former lawyer as a witness, and thus appellants were denied the opportunity to cross-examine him to test the veracity of Mrs. Page's assertions. Appellants argue that the court improperly refused this instruction. 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 3–1(C) at 17 (3rd ed. Supp.1996), citing *McClanahan v. United States*, 230 F.2d 919 (5th Cir.1956) *cert denied*, 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 47 (1956).

We agree with appellee that denial of appellants' request for a missing witness instruction was within the trial court's discretion. 1 Cleckley, *Handbook on Evidence*, § 3–1(C)(j) at 164 (1994) ("the rule is discretionary and subject to an abuse of discretion standard"). We also agree that the instruction is required only where there is an unjustified failure to call a material witness. *McGlone v. Superior Trucking Co., Inc.*, 178 W.Va. 659, 363 S.E.2d 736 (1987). On the record before us, we cannot conclude that

---

**15.** Appellants' instruction stated: "The unjustified failure of Mrs. Page to call her former lawyer to testify may, if you so find, give rise to an inference that the testimony of her former lawyer would have been adverse to Mrs. Page if he had been called."

appellants made a showing to the trial court that the uncalled witness would have been a material witness. In this connection, we note that appellee asserts that at one point in the pre-trial proceedings appellants sought to depose the subject witness but later withdrew the request. If Mrs. Page's prior lawyer had material testimony to offer, it is reasonable to assume that such a deposition, if taken, would have amply supported appellants' motion for the requested and refused instruction. However, we do not have before us any basis upon which to conclude that the trial court abused its discretion in refusing the adverse witness instruction.

### SIGNIFICANCE OF TESTIMONY

■ Appellants assert that Mrs. Page repeatedly inferred that her deposition testimony was significant to the *Boyd* lawsuit and that appellants should have been permitted to prove how the *Boyd* lawsuit was resolved to rebut any inferences so raised. The trial court granted a motion *in limine* prohibiting introduction of that evidence and the appellants assign error to that ruling.[16] Appellants argue that such evidence was relevant, not only to rebut Mrs. Page's inferences regarding the significance of her testimony in *Boyd*, but also to show that her testimony would not have been a motive for firing her. Thus, appellants assert that the exclusion of the evidence was an abuse of discretion.

Appellee responds that her deposition in the *Boyd* case is only relevant to the issue of whether Mr. Pierce and/or others at CNR were upset at the testimony at the time it was made. She argues that the fact that the *Boyd* case was later settled and that CNR was satisfied with the settlement is not relevant to this case and does not indicate how Mr. Pierce felt when he heard Mrs. Page's testimony. Moreover, if the court had allowed the *Boyd* settlement into evidence, it would have opened up other avenues of evidence to appellee and unnecessarily extended the already lengthy trial for no good reason.

16. After the trial court granted plaintiff's a motion in limine to exclude the amount of the settlement in the Boyd case, defendants offered their Instruction No. 10, which was given without objection and read:

Evidence is relevant if it has "any tendency to make the existence of any fact ... of consequence ... more probable or less probable than it would be without the evidence." W.Va.R.Evid. 401. Appellants' argument, as we understand it, is that since the *Boyd* case was resolved by settlement and the amount paid in the settlement (apparently $39,500) would be considered to be low or minimal, the jury might infer that Mrs. Page's testimony in the deposition was not a factor in her discharge. We cannot conclude that the trial court erred in excluding this testimony as irrelevant to the two issues identified. We believe that it was within the discretion of the trial court to conclude that the mere fact that a settlement was reached in *Boyd* in no way rebuts any suggestion that Mrs. Page's deposition testimony was or was not significant. Likewise, we find no abuse of discretion in the trial court's apparent conclusion that the fact that the *Boyd* case was settled rather than tried was not probative of the impact of Mrs. Page's *Boyd* deposition, considering especially that Mrs. Page's deposition would have been considered out of the context of all the other factors which may have led to a settlement. As to whether Mrs. Page's testimony constituted a motive for her discharge, we likewise find no abuse of discretion in the trial court's conclusion that the fact that the *Boyd* case was settled does not speak to why Mrs. Page was discharged. As to the apparent amount of the settlement, we likewise find no abuse of discretion and would be disposed to characterize such evidence as clearly irrelevant. Furthermore, we believe that such evidence, if admitted, may have suggested to the jury the value of a compromised claim bearing some resemblance to the case under consideration.

### DAMAGES CONTRARY TO EVIDENCE

Appellants argue that the jury's award of damages is contrary to the evidence and applicable law. We have reviewed the record

You are not to consider or guess about the outcome of the *Boyd* case. The final resolution of the *Boyd* case has not been admitted into evidence because it is not relevant to whether or not Mrs. Page was discharged because of her testimony in that case.

and the contentions of the parties and do not find error. Appellants assert four reasons for finding the damage award was inappropriate.[17]

■■■ Appellants first argue that the award for past economic loss was excessive and not supported by plaintiff's pre-discharge performance levels. The jury awarded $130,000 for past economic losses. Appellants subsequently filed a motion for a remittitur. The court granted the motion and reduced Mrs. Page's past economic damage award to $95,282. We have reviewed the evidence and find that the court corrected any error that may have occurred by granting the motion for a remittitur. Thus, we find this argument without merit.

Appellants next argue that Mrs. Page presented highly speculative and unsupported evidence of front pay losses, which tainted the jury deliberations. On a review of the record, we find that the jury deliberations were not tainted by such evidence, reflected particularly by the fact that the jury denied Mrs. Page's claim for front pay damages.

■■■ Moreover, we find that appellants waived error with regard to these first two issues. Appellee's expert testimony on the amount of Mrs. Page's past economic losses and her front pay losses was presented to the jury by playing a video of the expert's deposition testimony. While appellants objected, at the time the video was offered at trial, that the expert's method of calculating Mrs. Page's damages were erroneous, they failed to object to such testimony during the deposition. Under Rule 32(d)(3)(B) of the West Virginia Rules of Civil Procedure, "[e]rrors and irregularities occurring at the oral examination in the manner of taking the deposi-

tion, . . . and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition." Had appellants objected to the expert's method of calculation during the deposition, he may have been able to testify regarding alternate methods of calculation. Because appellants failed to object, we deem this error waived.

■■■ Appellants' third argument is that Mrs. Page's counsel improperly stated a specific dollar amount for emotional distress damages during his closing argument.[18] We do not find that counsel's comment was in error. As we commented with regard to a similar comment in *Adkins v. Foster*, "[w]e believe that counsel's statement was only intended to be an example and in no manner could be considered error or prejudicial to the appellants." 187 W.Va. 730, 736 n. 8, 421 S.E.2d 271, 277 n. 8 (1992). However, we caution counsel, as we did in *Adkins*, to be mindful of our holding in syllabus point 7 of *Bennett v. 3 C Coal Co.*, 180 W.Va. 665, 379 S.E.2d 388 (1989):

> The better practice in civil cases is to avoid mentioning to the jury the amount sued for, but such disclosure alone may not be reversible error. However, in a case involving only damages for mental distress, disclosure of such information may result in reversible error where the verdict is obviously influenced by such statement.

Moreover, we find that appellants waived this error by failing to object when counsel made the complained of comments. " 'Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the ques-

---

17. Appellants presented the additional argument that the circuit court erred by awarding prejudgment interest from the date of Mrs. Page's termination, rather than from the date that her losses actually accrued. However, appellee's brief indicates that this issue is moot, as Mrs. Page has agreed to calculate the interest on lost wages as they would have been accrued.

18. In closing argument, Mrs. Page's counsel stated, in relevant part:

I'm not going to suggest that number to you, that's something that you jurors come together in your wisdom and common experience in our community and decide. One of you might say, "Well, we should give her $25,000." Another of you might say, "Well, now wait a second. Getting fired is a much more horrible thing than that. What she went through. Everything that happened to her. Let's give her $150,000." And one of you may say to the first one, "That's not enough." And another of you may say to the second one, "That's too much." Someone else might even say, "Well, I think we should give her more."

tion thereafter either in the trial court or in the appellate court.' Point 6, syllabus, *Yuncke v. Welker,* 128 W.Va. 299 [36 S.E.2d 410]." *State v. Cirullo,* 142 W.Va. 56, 93 S.E.2d 526 (1956). *See also* syl. pt. 2, *Parsons v. Norfolk and Western Ry. Co.,* 185 W.Va. 718, 408 S.E.2d 668 (1991) (per curiam) (held that defense counsel waived error by failing to object to plaintiff's counsel's suggestion to jury that they return award of $1.3 million dollars).

Finally, appellants argue that the $150,000 award for emotional distress was excessive and not supported by the evidence. Appellants argue that Mrs. Page presented no evidence of expenses incurred due to emotional distress and no evidence from an expert to prove the existence or extent of her emotional distress. In syllabus point 3 of *Harless v. First Nat'l Bank in Fairmont,* 169 W.Va. 673, 289 S.E.2d 692 (1982), a second decision in the *Harless* case subsequent to the decision previously cited in this opinion, we stated that "[t]he tort of retaliatory discharge carries with it a sufficient indicia of intent, thus, damages for emotional distress may be recovered as part of the compensatory damages." The Court indicated that, as with the tort of intentional infliction of emotional distress, there need not be an initial physical injury or subsequent physical manifestation in order to recover emotional distress damages in a retaliatory discharge action. *Id.* at 689–690, 289 S.E.2d at 701–02. In *Harless,* the only evidence of plaintiff's emotional distress was apparently plaintiff's own testimony on the issue, along with corroborating testimony by his wife. *Id.* at 685, 289 S.E.2d at 700–01. While this Court remanded the case on other grounds, we did not discuss the proof required to support emotional distress damages, nor did we instruct the parties that the level of proof previously offered by plaintiff would be inadequate to support such an award.

■ Subsequently, in *Mace v. Charleston Area Medical Center Foundation, Inc.,* 188 W.Va. 57, 422 S.E.2d 624 (1992), the defendant employer complained on appeal that " 'there was absolutely no evidence presented by plaintiff to support an award for emotional distress.' " *Id.* at 66, 422 S.E.2d at 633.

Furthermore, the appellant in *Mace* complained that the plaintiffs did not offer the type of testimony offered by the plaintiff in *Harless.* In response, the appellee/employee in *Mace* contended that, although there was no direct evidence of emotional distress, " 'there was ample evidence from which the jury could, and apparently did, infer such suffering.' " *Id.* Even in the absence of direct evidence supporting the claim of emotional distress, the *Mace* Court declined to disturb the jury's award of emotional distress damages. Consequently, we find that Mrs. Page's testimony regarding the emotional symptoms she suffered as a result of her termination, along with the supporting testimony of her husband and three other individuals was sufficient evidence upon which to base this damage award.

■ In response to appellants' assertion that the award of $150,000 for emotional distress was excessive, we note that "[c]ourts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous, and manifestly show jury passion, partiality, prejudice or corruption." Syl., *Addair v. Majestic Petroleum Co., Inc.,* 160 W.Va. 105, 232 S.E.2d 821 (1977). We do not believe the emotional distress award in the case *sub judice* warrants reversal under the *Addair* standard.

■ In sum, we find that there is sufficient evidence to support each of the elements of the damages awarded. " ' "When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it." ' Point 4, Syllabus, *Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894." Syllabus point 2, *Walker v. Monongahela Power Company,* 147 W.Va. 825, 131 S.E.2d 736 (1963). Syl. pt. 2, *McNeely v. Frich,* 187 W.Va. 26, 415 S.E.2d 267 (1992) (per curiam).

## CROSS-ASSIGNMENTS OF ERROR

Appellee presented cross-assignments of error complaining that the trial court erred

when it failed to instruct this case as a case under the West Virginia Human Rights Act; when it failed to award attorney's fees and costs under the West Virginia Human Rights Act; when it refused to admit testimony concerning CNR's failure to discipline a CNR manager who admittedly gave false testimony in the *Boyd* case; and when it failed to set aside the jury's verdict awarding no damages for future lost income. However, appellee stated that such cross-assignments were withdrawn in the event that this appeal was denied. Because we have affirmed the circuit court's ruling on this case, we deem appellee's cross-assignments withdrawn.

For the reasons stated, we find no error and affirm the judgment of the Circuit Court.

Affirmed.

CLECKLEY, J., deeming himself disqualified, did not participate in this case.

RECHT and HATCHER, JJ., sitting by temporary assignment.